UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
UNITED STATES OF AMERICA       :
                                                  :
            - v. -                    :          11 Cr. 904 (RPP)
                                                  :
DREW K. BROWNSTEIN,           :
                                                  :
                Defendant.            :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

                                                 PREET BHARARA
                                                 United States Attorney for the
                                                 Southern District of New York,
                                                 Attorney for the United States of America

MICHAEL A. LEVY
ANTONIA M. APPS
Assistant United States Attorneys,
      Of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
UNITED STATES OF AMERICA                      :
                                              :
                - v. -                        :     11 Cr. 904 (RPP)
                                              :
DREW K. BROWNSTEIN,                           :
                                              :
                        Defendant.            :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

As stipulated by the parties in the plea agreement in this case, the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") recommend that this Court sentence defendant Drew K. Brownstein to a term of imprisonment of between 37 and 46 months. Despite this, the United States Probation Office, in its Presentence Investigation Report ("Presentence Report" or "PSR"), has suggested that the defendant's remorse and the support shown by his friends and family counsel in favor of a sentence of six months' imprisonment. The defendant, himself, requests a sentence of probation. Both the Probation Office and the defendant, however, all but ignore the need for general deterrence, which this Court recently described as the most important sentencing factor in insider trading cases such as this. Accordingly, for the reasons that follow, the Government respectfully submits that a term of imprisonment far more substantial than that recommended by the Probation Office should be imposed.

**Background**

The facts relevant to sentencing are largely undisputed.  Over a two-day period in April 2010, the defendant – the founder and president of the hedge fund, Big 5 Asset Management ("Big 5") – traded heavily and aggressively on the unquestionably material and non-public tip from friend Drew Peterson that Mariner Energy was about to be acquired by Apache Corporation.  The defendant was well aware that Drew Peterson had obtained the information based on a breach of duty by his father, H. Clayton Peterson, then a Mariner Board member.  On the third-day, when the acquisition was announced publicly, the defendant sold all of the Mariner stock and options he had purchased, netting approximately $2.4 million in illegal profits for himself, his hedge fund, and other individuals over whose accounts he had trading authority.  Subsequently, when confronted with the likelihood that he was to be charged for his offense, the defendant agreed to plead guilty, which he then did forthrightly.  The Sentencing Guidelines call for a sentence of between 37 and 46 months' imprisonment for the offense.

**Discussion**

In recommending a sentence of six months' imprisonment, the Probation Office cites: (i) the defendant's "genuine remorse" and the resulting conclusion that it is "highly doubtful that he will become involved in future conduct of this nature"; (ii) the defendant's reported "arrangements to repay the full amount of the $130,000 in personal profit he gained from the offense, and his expressed willingness to pay any forfeiture imposed by the Court"; and (iii) the "significant support" expressed by the defendant's family, friends and members of the community for a "non-imprisonment sentence." (PSR at 19).  The defendant, himself, cites his personal history and characteristics, and the relatively brief duration of the offense, among other

things. Although the Government generally does not dispute the relevance of these factors –
except for the suggestion that the defendant's personal gain was limited to $130,000[1] – both the
Probation Office and the defendant all but ignore the need for general deterrence, which this
Court has stated is the most important factor in insider trading cases such as these.

The Court recently made its view on this point clear when sentencing H. Clayton
Peterson, the Mariner board member from whom the tip received by the defendant originated. In
that case, the Court said, "I think in the normal insider trading case, this Judge, I think, considers
deterrence the main, main thing that the courts have got to keep in mind." (Peterson Sent. Tr. at
20; Ex. A, hereto). As the Court explained, insider trading "is a serious crime. And the reason it
is serious is because the greed in this society has become something that is really obscene. And,
unfortunately, as we've seen in the numerous prosecutions in this Court the last few years, that
inside trading has been rife. Now, you can't punish people for other people's crimes, but you are
supposed to take into account some deterrence." (*Id*. at 19). The Court further "noted . . . that
particularly in these cases, and this – and there are a lot of them in the Court that – let me put it
this way – that I think there's some fault that judges are too lenient on these cases." (*Id*. at 7).

---

[1] The Probation Office's focus on the $130,000 in illegal gains that resulted from the defendant's trading in his personal account seems to suggest that the remainder of the trading did not benefit the defendant personally. This is inaccurate. The bulk of the nearly $2.5 million in illegal gains were based on trades that the defendant caused his own hedge fund to make. As the defendant correctly acknowledges, "Mr. Brownstein benefitted as well from the successful trading in the Funds' accounts." (Def. Sent. Mem. at 34 n.10). Specifically, the illegal trading in Big 5's accounts profited the defendant personally as an investor in the hedge fund, as a recipient of management fees generated by successful trading by the fund, and as the prospective recipient of even greater returns and even greater management fees if the illegal trading contributed to a track record of success that drew new investors to the fund.

-3-

The Court's view that insider trading is a serious crime requiring a serious sentence to effect serious deterrence is well-founded.  As explained by four former Chairmen of the Securities and Exchange Commission in a letter to the Honorable Richard J. Holwell, United States District Judge, in connection with the recent sentencing of Raj Rajaratnam, insider trading victimizes "[a]nyone who sold or purchased the securities that were the subject of the defendant's unlawful conduct."  (Ltr. at 1; Ex. B, hereto).  But more importantly:

> [T]he harm inflicted by insider trading is not felt only by the specific individuals who trade in the affected securities.  Insider trading handicaps the efficiency of our markets because it diminishes confidence in our markets, and discourages sophisticated and unsophisticated investors alike from committing their funds to a marketplace they fear may be "rigged."  Harm is felt by public companies and those who seek to utilize our capital markets to generate capital for business growth and expansion. The fact that some persons – with access to non-public information that could influence investor decisions to buy, sell or hold securities – can utilize that information to the disadvantage of others, makes it more difficult for U.S. corporations to raise capital, fund and expand operations, increase employment, and otherwise prosper.

(*Id.* at 2).  For this reason, whatever one thinks of the defendant's questionable argument that the amount of his illegal gain resulting from his offense was "largely out of the defendant's hands" (Def. Sent. Mem. at 31), the argument fails because the devastating harm to confidence in the securities markets would remain largely as severe even if the specific gain to the defendant had been less.  As explained by the Honorable Victor Marrero, United States District Judge, in *United States* v. *Kurland,* 718 F. Supp. 2d 316, 320 (S.D.N.Y. 2010), "In the context of securities fraud, the whole range of harm caused cannot be measured solely by the defendant's net losses or gains," because such a "calculus of injury improperly discounts material harm [the defendant's] offense caused to larger societal interests."  *Id*.

-4-

The defendant's willingness to commit an offense that would contribute to the erosion of confidence in the securities markets is all the more troubling because the defendant was, himself, a securities industry professional.  The defendant was not a casual participant in the securities markets, with no personal or vested interest in the honesty and efficiency of those markets.  Rather, for most of his adult life, the defendant built his career and earned a prosperous living for himself and his family precisely because of the existence of robust, honest, and efficient markets in this country.  As with a lawyer who commits perjury, it merits consideration that the defendant chose to undermine the integrity of a system whose integrity he, himself, had relied upon for his livelihood.

None of this is to say that because insider trading is a serious crime that requires serious deterrence, the Court should ignore the positive factors cited by the Probation Office and the defendant.  But a sentence of six months' imprisonment – much less the sentence of probation sought by the defendant – substantially undervalues the need for general deterrence.  Although the defendant points to the probationary sentence imposed on Clayton Peterson as an indication that a similar sentence is justified here, the Guidelines in Clayton Peterson's case called for a far lower sentence of 12 to 18 months' imprisonment.  Although the Court imposed a sentence below the applicable Guidelines range, a reduction of just two offense levels was all that would have been needed in that case for the Guidelines, themselves, to have permitted a sentence of probation with home detention; which is what the Court imposed.  The same cannot be said here.  Imposition of anything less than a substantial term of imprisonment in this case would mean granting greater leniency to this defendant than to Peterson – and, more significantly, doing greater disservice to the goal of general deterrence – all with less cause.

**Conclusion**

For the foregoing reasons, the Government respectfully submits that the Court should reject the recommendations of the Probation Office and the defendant and impose a sentence that includes a significant term of imprisonment.

Dated: New York, New York
December 30, 2011

Respectfully submitted,

PREET BHARARA
United States Attorney

By: /s/ Michael A. Levy
MICHAEL A. LEVY
ANTONIA M. APPS
Assistant United States Attorneys
(212) 637-2346/2198